JOSEPH T. MCNALLY
Acting United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
KATHY YU (Cal Bar No. 268210)
CAITLIN J. CAMPBELL (Cal Bar No. 324364)
Assistant United States Attorneys
        1200 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone:    (213) 894-2431
                      (714) 338-3541
        E-mail:  kathy.yu@usdoj.gov
                 caitlin.campbell@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 8:24-CR-00065-FWS |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM |
| v. | |
| AUSTIN LARMOUR, aka John Doe, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Kathy Yu and Caitlin J. Campbell hereby files its Sentencing Position for defendant Austin Larmour.

The government's sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 30, 2025

Respectfully submitted,

JOSEPH T. MCNALLY
Acting United States Attorney

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division

            /s/ *Kathy Yu*
KATHY YU
CAITLIN J. CAMPBELL
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   INTRODUCTION

Defendant, a former Disney employee, knowingly participated in a group chat that glorified and normalized the exchange of child sex abuse images.  For his conduct, on June 20, 2024, defendant pled guilty to Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2).

On January 8, 2025, the United States Probation Office filed its Presentence Investigation Report ("PSR"), in which it calculated a total offense level of 27 and determined that defendant falls within Criminal History Category I, resulting in an advisory Guidelines range of 70 to 87 months after a three-level reduction for acceptance of responsibility.  In the interests of justice, and based on the unique facts and circumstances of this particular case (including defendant's upbringing and personal circumstances, extraordinary acceptance of responsibility, and what appears to be his renewed respect for the law), the government believes a six-level variance is warranted.

With this six-level variance and based on the particular factual record in this case, the government recommends the following sentence:  37 months' imprisonment, followed by a 10-year period of supervised release, and a mandatory special assessment of $100.

## II.   OFFENSE CONDUCT

Defendant admitted the following facts in the plea agreement and at the change of plea hearing (Dkts. 17, 27):

On or about November 27, 2019, in Orange County, within the Central District of California, defendant knowingly possessed on his cellphone approximately 11 files containing child pornography, as

listed in the Information, and obtained them from a Telegram chat group.  Defendant admits and agrees that he knew the files that he possessed contained visual depictions of minors engaging in sexually explicit conduct, that he knew each visual depiction contained in the images and videos showed minors engaged in sexually explicit conduct, and that he knew that production of such visual depictions involved use of minors engaged in sexually explicit conduct.  Defendant admits and agrees that at least one of the files he possessed depicted a prepubescent minor and minor who had not attained 12 years of age engaging in sexual conduct, and that at least one of the files he possessed portrayed sadistic or masochistic sexual conduct involving a minor child.  For example, defendant knowingly possessed an approximately one minute, 52-second video titled "video_7@27-11-2019-15-30-07.mp4," which depicted the rape of a 5-8 year old boy.

The children depicted in the child pornography files are real children, and the files were transported using the Internet, which is a means and facility of interstate and foreign commerce, using a computer.

**III. GUIDELINES CALCULATION**

    **A.  Defendant's Offense Level**

The parties agreed, and the Probation Office recommended, application of the following base offense level and specific offense characteristics as it relates to defendant's offense conduct (PSR ¶¶ 27-41), resulting in an adjusted offense level of 30:

| | | |
|---|---|---|
| Base Offense Level: | 18 | U.S.S.G. § 2G2.2(a)(1) |
| Minor <12 Years Old: | +2 | U.S.S.G. § 2G2.2(b)(2) |
| Sadistic or Masochistic Conduct: | +4 | U.S.S.G. § 2G2.2(b)(4)(A) |

```
Use of a Computer:            +2         U.S.S.G. § 2G2.2(b)(6)

At least 300 images but fewer  +4    U.S.S.G. § 2G2.2(b)(7)(C)
than 600
```

### B.   Criminal History

Defendant has no criminal history.  (PSR ¶¶ 46-47.)

### C.   Guidelines Calculation

With a total offense level of 27 after acceptance of responsibility, and a criminal history category of I, the Guidelines range is 70 to 87 months.  (PSR ¶ 106.)

## IV.  A 37-MONTH SENTENCE IS SUPPORTED BY THE 3553(A) FACTORS

### A.   Nature and Circumstances of the Offense

The nature and circumstances of the offense support the government's recommended sentence.  Child exploitation is a serious offense, which defendant facilitated by possessing and receiving child sex abuse material.  Moreover, defendant normalized this illegal, deviant, and harmful behavior by, among other things, sexualizing children and discussing a group trip to Disneyland with other like-minded individuals.  For example, after receiving a video depicting the rape of a child under the age of six, defendant commented "That's be hot," "I wanna see more stuff like this," "This shit is hot guys," and requested more content of this nature.  (PSR ¶ 14.)  Defendant also talked about hands-on contact with potential victims, saying "I want to fuck a boy and watch him shoot his clear cum," "Honestly I'd do love to mess around with a 7-8," and "I'd do any age tbh."  (Id.)  In addition to his enthusiastic solicitation and normalization of child sex abuse material, defendant's offense conduct also involved an active discussion of his desire to engage in

hands-on contact with a child – including going so far as to detail his preferred gender, age, and sex act.

To his credit, defendant appears to have recognized the severity of his conduct by pleading guilty early (pre-indictment), as well as seeking and maintaining professional help, including regular sessions with "an amazing therapist who has taught [him] skills how to handle anxiety."  (PSR ¶¶ 72-77.)  Moreover, according to a psychosexual evaluation and risk assessment report dated November 2024, the doctor found that defendant has "complete or nearly complete control over his sexual behavior," "does not appear to have a persistent sexual attraction to children," and is "at low risk for a new arrest for sexual behavior."  (Id. ¶¶ 77(a)-(c).)

This psychosexual evaluation and risk assessment is supported by other facts in the record.  In connection with the offense conduct, investigating agents interviewed defendant twice.  The first time was in September 2021.  During this interview, defendant immediately admitted his involvement in the chat group and identified naked photos of himself that he had uploaded to the group, as well as his statements in the chat.  (PSR ¶ 18.)  He maintained that he had never had physical contact with children and his statements were just "fantasy."  (Id.)  To corroborate his statements, he signed a consent form for his cell phone and allowed agents to take over his Telegram account.  (Id.)

Tellingly, when he was arrested in this case in April 2024, he, once again, agreed to be interviewed by law enforcement and consented to a search of his cell phone.  In this interview, he said he remembered that he been approached by law enforcement previously, and that he had not engaged in illicit sexual conduct involving minors

since then.  In reviewing the contents of defendant's phone, agents did not find any child sex abuse material or chats regarding children.  While defendant had expressed a deviant sexual interest in minors – including an interest in hands-on contact – it appears that his contacts with law enforcement (including his two interviews and arrest) have been effective so far in deterring him from illicit activity.  Based on the unique circumstances of this case, the government is cautiously optimistic that a custodial sentence of 37 months will be sufficient but not greater than necessary to deter defendant from any future illegal conduct.

### B.    Defendant's Personal Circumstances, Upbringing, and Extraordinary Acceptance of Responsibility Also Support the Government's Recommended Sentence

The government is mindful of personal hardships defendant has had to overcome, as set forth in detail in the PSR, in particular the physical and verbal abuse he witnessed and experienced during his formative years.  (PSR ¶¶ 52-66.)  According to defendant, his home life during his childhood and early adolescence was tumultuous – with "many arguments between his parents," which led him to "not have a lot of great memories."  (PSR ¶ 54.)  While defendant "never went without basic necessities," he reported having a difficult relationship with his father, especially when defendant was going through puberty – which led to issues he is still dealing with, through therapy (PSR ¶ 66).

Defendant has also demonstrated an extraordinary acceptance of responsibility.  After he was arrested in April 2024, defendant agreed to plead guilty, pre-indictment, thereby saving government and court resources as well as demonstrating his remorse in committing the instant offense.  Moreover, while on pretrial release for the

past nine months, his pre-trial services officer has reported no issues despite stringent electronic monitoring and other conditions imposed on defendant.  (PSR ¶ 9.)  Defendant's exemplary behavior has even resulted in a modification to his bond condition, downgrading from home detention to curfew as directed by the supervising agency.  (Dkt. 33.)  Defendant has also maintained gainful employment at a McDonalds as a salesclerk and then an area manager and is flourishing in that role – so much so that he recently passed an exam to be a shift leader and received an employee of the month award.  (PSR ¶ 90.)  In his spare time, he also volunteers at an animal shelter.  (Id. ¶ 91.)  In consideration of the foregoing and all of the 3553 factors and what appears to be a renewed respect for the law, the government believes that its 37-month recommended sentence will serve the goals of sentencing.

## C.    A 10-Year Period of Supervised Release is Appropriate

The government acknowledges the Probation Officer's recommendation of a lifetime period of supervised release and the policy statement at U.S.S.G. § 5D1.2(b)(2) that the statutory maximum term of supervised release – lifetime – should be imposed in sex offense cases.  (USPO Rec. Ltr at 12.)  However, in determining the appropriate term of supervised release and the length of the term, the Court considers a subset of the 3553 factors as applied to defendant:  the nature of and circumstances of the offense and the history and characteristics of the defendant; the need to afford adequate deterrence, protect the public, and provide defendant with medical care or other correctional treatment; the guideline range and guideline policy statements, and the need to avoid unwarranted sentencing disparities and provide restitution.  18 U.S.C. § 3583(c).

Here, given defendant's role in the offense, his performance while on pretrial release, his healthy coping mechanisms (therapy) and the need to provide him with continued sex offender treatment, his steady employment, and his genuine remorse, the government recommends a 10-year period of supervised release versus the lifetime period of supervised release recommended by USPO.  However, as to Condition #4 – sex offender registration – the government requests the following modification (underlined):

> Within three (3) days of release from prison, the defendant shall register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, is employed and is a student, pursuant to the registration procedures that have been established in each jurisdiction. When registering for the first time, the defendant shall register in the jurisdiction in which the conviction occurred if different from the defendant's jurisdiction of residence.  The defendant shall provide proof of registration to the Probation Officer within 48 hours of registration.  The registration requirement will be for a lifetime term.

### D.   Fines, Special Assessments, and Restitution

Given defendant's negative monthly cash flow, minimal net worth, as well as several third-party collection accounts (PSR ¶¶ 94-95, 101-102), the government agrees that defendant does not have the ability to pay a fine, or the special assessments pursuant to 18 U.S.C. § 3014(a)(3) and § 2259A(a).

While restitution is due regardless of defendant's ability to pay,[1] no victims have submitted any restitution requests as of this filing.  To the extent the government receives any restitution requests, it will meet and confer with the defense to see if an

---

[1] 18 U.S.C. § 2259(b)(4) (restitution order is "mandatory" and a court "may not decline an order under this section because of . . . the economic circumstances of the defendant").

agreement can be reached.  The government has filed, under seal, three victim impact statements received to date (Dkt. 38).

**V.    CONCLUSION**

Based on the particular factual record in this case, the government recommends the following sentence:  37 months' imprisonment, followed by a 10-year period of supervised release, and a mandatory special assessment of $100.